**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br>Plaintiff,<br>v.<br>ABB LIMITED,<br>Defendant. | Civil Action No. 2:26-cv-00826<br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against ABB Limited ("ABB" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop ABB's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209876 |
| B | 7,593,428 | Apparatus, and Associated Method for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.gov, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |
| C | 7,643,423 | Resource Management in a Wireless Communication System | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7643423 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| D | 9,008,055 | Automatic Remote Services Provided by a Home Relationship Between a Device and a Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |
| E | RE44,742 | Dynamic Message Templates And Messaging Macros | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2. IoT Innovations seeks injunctive relief and monetary damages.

**PARTIES**

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Based upon public information, ABB is a corporation organized and existing under the laws of Switzerland.

5. Based upon public information, ABB has its principal office at Affolternstrasse 44, 8050 Zurich, Switzerland, where it may be served.

**JURISDICTION AND VENUE**

6. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. §1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S. C. § 1391(c)(3). *See In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (noting that"[t]he Court's recent decision in

*TC Heartland* does not alter" the alien-venue rule).

9. Defendant offers products and services, including through the use and/or testing of the Accused Products, and conducts business in this District.

10. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

11. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District. Defendant offers its products for sale through at least the following partners and locations within this District: Advanced Industries (Longview); CED (Longview, Texarkana); Dealers Electric (Marshall, Longview, Tyler, Texarkana, Palestine, Lufkin, Paris); Elliott (Marshall, Longview, Kilgore, Henderson, Mount Pleasant, Tyler, Texarkana, Jacksonville, Nacogdoches, Sulphur Springs, Palestine, Lufkin, Paris); Fastenal (Longview, Mount Pleasant, Tyler, Lufkin, Paris); Gexpro (Tyler); Irby (Texarkana); Lonestar Electric Supply (Tyler); Rexel (Longview, Tyler); The Reynolds Company (Tyler, Lufkin); WESCO (Longview); Wholesale Electric (Tyler, Texarkana Lufkin).

12. Defendant uses these offices and warehouses to sell and distribute its products including the Accused Products as described below.

13. Defendant commits acts of infringement from this District, including, but not limited

to, importing, selling, offering, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

**THE ACCUSED PRODUCTS**

14. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

15. Based upon public information, Defendant owns, operates, and/or controls the website and domain http://new.abb.com, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.

16. Defendant makes, uses, causes to be used, sells, offers for sale, provides, supplies, and/or distributes its AI-powered industrial copilot solutions (including the ABB Ability Genix Copilot, Genix My Measurement Assistant Copilot, Genix Asset Performance Management (APM) Copilot, and Genix Sustainability Insights Copilot); its smart home ecosystem solutions (including the ABB-free@home Smart Home System, the ABB-free@home Next mobile application, the System Access Point, and the MyBuildings remote access service); its wireless communication products (including the ABB Ability Edge Industrial Gateway, Nave Pro Gateway, E-Hub 2.0, ABB-free@home SAP/S.3, D04011 Smart Access Point Pro, WLAN access point flush-mounted, WLAN access point PoE flush-mounted, SAP/S.13, TropOS mesh router series, Circuit Monitoring System (CMS) – 770, Busch-Radio iNet, Terra AC wallbox, and ABB VSN 300 WIFI logger card); its autonomous mobile robot products (including the ABB AMR T901 and ABB Ability Smart Device Manager 3.0); its distributed control system solutions (including the ABB Distributed Control System (DCS) System 800xA) and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware,

software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

17. Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products.

18. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,876**

19. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20. The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007, after full and fair examination of Application No. 10/293,743, which was filed on November 13, 2002. *See* '876 patent at p. 1.

21. IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce the '876 patent against infringers and to collect damages for all relevant times.

22. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

23. The claims of the '876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of automated answering of natural language questions and queries issued to information repositories.

24. The written description of the '876 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

25. Defendant has directly infringed the claims of the ’876 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’876 patent. Defendant, through the use and provision of the Accused Products, including ABB Ability Genix Copilot, performs a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: a. receiving a search question or query containing at least one variable expression, said at least one variable expression being representative of desired answer data that is to be searched for in said information repository; b. initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising information containing terms present in said search question or query; c. searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and d. modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.

26. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,643,423**

27. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

28. The USPTO duly issued U.S. Patent No. 7,643,423 (hereinafter, the "'423 patent") on January 5, 2010, after full and fair examination. *See* '423 patent at p. 1.

29. IoT Innovations owns all substantial rights, interest, and title in and to the '423 patent, including the sole and exclusive right to prosecute this action and enforce the '423 patent against infringers and to collect damages for all relevant times.

30. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '423 patent.

31. The claims of the '423 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of wireless communication systems by providing uplink resource management and multi-user communication capabilities.

32. The written description of the '423 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

33. Defendant has directly infringed the claims of the '423 patent by using, providing,

supplying, or distributing the Accused Products. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’423 patent. Defendant, using the Accused Products and their associated hardware and software and functionalities, including the ABB AMR T901 and ABB Ability Smart Device Manager 3.0, performs a method comprising: transmitting, via a downlink channel, a frame to two or more communication units, a first portion of the frame including reservation set information and a second portion of the frame including allocation set information, wherein the allocation set information indicates a dynamically determined set of uplink channels that constitute an allocation set, and wherein the reservation set information indicates particular channels of the allocation set that are reserved for each of the two or more communication units; receiving uplink communications from at least one of the two or more communications units via the communications channels reserved thereto as indicated by the reservation set.

34. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,593,428**

35. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "’428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* ’428 patent at p. 1.

37. IoT Innovations owns all substantial rights, interest, and title in and to the ’428 patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

38. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’428 patent.

39. The claims of the ’428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by selectively providing extended checksum protection to data packets communicated between communication stations, enabling more reliable and secure transmission of data across networks.

40. The written description of the ’428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. Defendant has directly infringed the claims of the ’428 patent by using, providing, supplying, or distributing the Accused Products. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 14 of the ’428 patent. Defendant, using the Accused Products and their associated hardware and software and functionalities, including the ABB Ability Edge Industrial Gateway, Nave Pro Gateway, E-Hub 2.0, ABB-free@home SAP/S.3, D04011 Smart Access Point Pro, WLAN access point flush-mounted, WLAN access point PoE flush-mounted, SAP/S.13, TropOS mesh router

series, and other IEEE 802.11-enabled devices, performs a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

42. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,008,055**

43. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

44. The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015 after full and fair examination of Application No. 10/903,931 which was filed on July 29, 2004. *See* '055 patent at p. 1.

45. IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

46. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’055 patent.

47. The claims of the ’055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

48. The written description of the ’055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49. Defendant has directly infringed the claims of the ’055 patent by using, providing, supplying, or distributing the Accused Products.

50. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’055 patent. Defendant, using the Accused Products and their associated hardware and software and functionalities, including the ABB-free@home Smart Home System, the ABB-free@home Next mobile application, the System Access Point, and the MyBuildings remote access service, performs a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: receiving, by the server, information that was stored in the mobile

device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network; wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network.

51. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '055 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

53. Defendant had knowledge of the '055 patent at least as of the date when it was notified of the filing of this action.

54. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '055 patent by inducing others to directly infringe said claims.

55. Defendant has induced end-users, including, but not limited to, Defendant's

employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the ’055 patent by providing or requiring use of the Accused Products.

56. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent.

57. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

58. Defendant is performing these steps, which constitute induced infringement with the knowledge of the ’055 patent and with the knowledge that the induced acts constitute infringement.

59. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the ’055 patent.

60. Defendant’s inducement is ongoing.

61. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the ’055 patent.

62. Defendant has contributed to the direct infringement of the ’055 patent by their personnel, contractors, and customers.

63. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more

claims of the ’055 patent, including, for example, claim 1 of the ’055 patent. The special features constitute a material part of the invention of one or more of the claims of the ’055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact the primary purpose of the Accused Products is to act and operate in a way that infringes the ’055 patent.

64. Defendant’s contributory infringement is ongoing.

65. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

66. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

67. Defendant’s direct infringement of one or more claims of the ’055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations’ rights under the patent.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. RE44,742**

68. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

69. The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the “’742 patent”) on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* ’742 patent at 1. The ’742 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

70. IoT Innovations owns all substantial rights, interest, and title in and to the ’742 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

71. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’742 patent.

72. The written description of the ’742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

73. The claims of the ’742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

74. Defendant has directly infringed the claims of the ’742 patent by using, providing, supplying, or distributing the Accused Products.

75. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’742 patent. Defendant, using the Accused Products and their associated hardware and software and functionalities, including the ABB Distributed Control System (DCS) System 800xA, performs a method comprising: executing an application at a device, wherein message context data including message context data items is associated with the executing application; selecting a selected message context data item from the message context data associated with the executing application; and automatically inserting the selected message context data item in a dynamic field of a template to facilitate the creation of a message to send from the device.

76. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

78. Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

79. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '742 patent by inducing others to directly infringe said claims.

80. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.

81. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.

82. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner;

advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

83. Defendant is performing these steps, which constitute induced infringement with the knowledge of the ’742 patent and with the knowledge that the induced acts constitute infringement.

84. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the ’742 patent.

85. Defendant’s inducement is ongoing.

86. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the ’742 patent.

87. Defendant has contributed to the direct infringement of the ’742 patent by their personnel, contractors, and customers.

88. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’742 patent, including, for example, claim 1 of the ’742 patent. The special features constitute a material part of the invention of one or more of the claims of the ’742 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact the primary purpose of the Accused Products is to act and operate in a way that infringes the ’742 patent.

89. Defendant’s contributory infringement is ongoing.

90. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

91. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

92. Defendant's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**JURY DEMAND**

93. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

94. IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '055 and '742 patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c. Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements be found willful as to the '055 and '742 patents, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 15, 2026</u>

Respectfully submitted,

By: *<u>/s/ C. Matthew Rozier</u>*

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff IoT INNOVATIONS LLC***

* admitted to the Eastern District of Texas

**<u>Attachments</u>**: Civil Cover Sheet, Proposed Summons